IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge Raymond P. Moore

Civil Action No. 19-cv-03465-RM-SKC

DESCHENES CONSULTING, LLC, and
JOSHUA DESCHENES,

    Plaintiffs,

v.

NU LIFE MARKET, L.L.C.,

    Defendant.

---

# ORDER
---

This diversity case is before the Court on cross-motions for summary judgment and partial summary judgment (ECF Nos. 119, 141) and Plaintiffs' Objection to the magistrate judge's March 24, 2022, Order (ECF No. 140). The Motions have been briefed and are ripe for review. (ECF Nos. 135, 137, 144, 148, 149, 156.) As explained below, Defendant's Motion is granted, Plaintiffs' Motion is granted in part and denied in part, and their Objection is overruled as moot.

**I.    BACKGROUND**

This dispute arises from a business relationship that began when Defendant, a Kansas-based sorghum processor, retained Plaintiff Deschenes as a sales representative in September 2013. At that time, Plaintiff Deschenes signed a non-disclosure agreement, and Defendant agreed to pay him "$4,000 per month and 2% of gross retail and ingredient sales dollars generated by you and the brokerage sales team that you/we put into place." (ECF

No. 157, ¶¶ 1, 2, 16.) The arrangement was revised in December 2015, when Defendant agreed to pay Plaintiffs an increased monthly service fee of $5,750 plus "2% of sales ([freight on board] Scott City, KS Facility) generated by Deschenes Consulting, Rachel Klataske, and designated brokers unless stated in individual customer's contracts." (*Id.* at ¶ 4.) Aside from these specific terms, there was no further contractual agreement between the parties. (*Id.* at ¶ 5.)

Defendant treated Plaintiffs as a contractor, not an employee, and reimbursed many of the costs they incurred in connection with their performance of services on its behalf. (*Id.* at ¶¶ 1, 10, 29.) Defendant paid the 2% commission through October 2019, when it gave Plaintiff Deschenes a termination letter. (*Id.* at ¶¶ 14, 18, 19.) The letter states that Defendant was "terminating your company services, Deschenes Consulting LLC, as our VP of Sales and Marketing." (ECF No. 120-10 at 1.)

Defendant alleges that following the termination, Plaintiff Deschenes "repeatedly accessed and exported company information," including "sales orders, notes, leads, and reports sales by account." (ECF No. 10 at 15, ¶¶ 11, 12.) According to Plaintiffs, they accessed the information to ascertain on which orders they were yet to be paid a commission. (*See* ECF No. 119 at 3.)

Plaintiffs initiated this lawsuit against Defendant and its president, asserting claims for breach of contract, breach of implied covenant of good faith, and extreme and outrageous conduct. Only their claim against Defendant for breach of contract survived the motion to dismiss stage. It is premised on the theory that under the parties' 2015 agreement, Defendant has a continuing obligation to pay commission even after it terminated Plaintiffs' services in October 2019.

Three of Defendant's counterclaims have also survived: (1) breach of contract; (2) misappropriation of trade secrets; and (3) unjust enrichment. These claims are premised on Plaintiffs' alleged violation of the non-disclosure agreement after receiving the termination letter.

Defendant seeks to have Plaintiffs' remaining claim dismissed with prejudice but does not seek to prevail on its counterclaims, while Plaintiffs seek case-dispositive summary judgment in their favor on their claim and Defendant's counterclaims.

## II.   LEGAL STANDARD

Summary judgment is appropriate only if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Gutteridge v. Oklahoma*, 878 F.3d 1233, 1238 (10th Cir. 2018). Applying this standard requires viewing the facts in the light most favorable to the nonmoving party and resolving all factual disputes and reasonable inferences in its favor. *Cillo v. City of Greenwood Vill.*, 739 F.3d 451, 461 (10th Cir. 2013). However, "[t]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

"The substantive law of the case determines which facts are material." *United States v. Simmons*, 129 F.3d 1386, 1388 (10th Cir. 1997). A fact is "material" if it pertains to an element of a claim or defense; a factual dispute is "genuine" if the evidence is so contradictory that if the matter went to trial, a reasonable jury could return a verdict for either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Whether there is a genuine dispute as to a material fact depends upon whether the evidence presents a sufficient disagreement to require submission to a

jury or is so one-sided that one party must prevail as a matter of law. *Id.* at 251-52; *Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132, 1136 (10th Cir. 2000).

### III. ANALYSIS

#### A. Defendant's Motion

To prevail on their breach of contract claim, Plaintiffs needs to show (1) the existence of a contract, (2) their own substantial performance or some justification for nonperformance, (3) Defendant's failure to perform, and (4) resulting damages. *See W. Distrib. Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992). Defendant argues that it is entitled to prevail on this claim because it has fully performed its obligations pursuant the parties' agreement through the date of its termination, and there is no legal or factual basis for any obligation on its part to continue paying commissions following the termination of the parties' business relationship. The Court agrees with Defendant.

"Under Colorado law, contracts should be interpreted consistently with the well-established principles of contractual interpretation." *Level 3 Commc'ns, LLC v. Liebert Corp.*, 535 F.3d 1146, 1154 (10th Cir. 2008) (quotation omitted). The Court's role is to give effect to the parties' mutual intent and reasonable expectations. *See id.*; *Tompson v. Md. Cas. Co.*, 84 P.3d 496, 501 (Colo. 2004). "The words of the contract should be given their plain meaning according to common usage, and strained constructions should be avoided." *Allstate Ins. Co. v. Huizar*, 52 P.3d 816, 819 (Colo. 2002).

In this case, it is not disputed that Defendant's 2015 offer letter is the sole document memorializing the parties' understanding as to how Plaintiffs would be paid for their services rendered as an independent contractor. Here is what the letter says:

4

> Dear Joshua,
>
> We thank you for your outstanding service over the past years and are making the changes below for your company's compensation.
>
> <u>Effective 12/1/2015:</u>
> * Monthly Service Fee = $5,750
> * 2% of sales (FOB Scott City, KS Facility) generated by Deschenes Consulting, Rachel Klatske, and designated brokers unless stated in individual customer's contracts.

(ECF No. 120-3 at 1.)

Notably, the letter says nothing about any ongoing obligation to pay commissions after the parties' business relationship ends or, as Plaintiffs contend, "for so long as [Defendant] makes sales to those customers." (ECF No. 149 at 5.) The Court finds the letter cannot reasonably be construed as creating such an obligation. The letter does not show that the parties had a meeting of the minds that a continuing obligation to pay commissions was part of their agreement. And it is undisputed that the parties "did not negotiate, draft, or execute a formal contract or any additional terms, other than what is contained in the 2015 Offer Letter." (ECF No. 157, ¶ 5.) Accordingly, the Court declines to add a term to the parties' contractual arrangement. *See In re Marriage of Stokes*, 608 P.2d 824, 829 (Colo. App. 1979) ("Courts cannot rewrite contracts or add terms thereto.").

Further, Plaintiffs do not dispute that they have not "been involved in" sales to Defendant's customers since their services were terminated in October 2019. (*See* ECF No. 149 at 17.) Under the circumstances, to say that that sales occurring after Defendant terminated Plaintiffs' services and which they were not "involved in" were nonetheless "generated" by them is the type of strained construction courts eschew when interpreting contracts. Nor does Plaintiffs' unreasonable interpretation of the parties' agreement render any part of it ambiguous.

5

"The mere fact that the parties may have different opinions regarding the interpretation of the contract does not itself create an ambiguity in the contract." *Ad Two, Inc. v. City & Cnty. of Denver*, 9 P.3d 373, 377 (Colo. 2000). There is simply no language suggesting that Plaintiffs would be entitled to commissions after they ceased providing services.

Plaintiffs' reliance on *Bob's Red Mill Natural Foods, Inc. v. Excel Trade, LLC*, 2013 WL 5874574, at *10 (D. Or. Oct. 30, 2013) (unpublished), is misplaced because there, the parties' commission agreement expressly provided for a perpetual obligation to continue paying commissions. In contrast, the letter contains no mention of any such obligation. Further, the court stated that under Oregon law, "if there is nothing in the nature of a contract to indicate that the contract is perpetual, courts will interpret the contract to be terminable at will." *Id.* at *7 (quotation omitted).

Nor is *Lamoureux v. MPSC, Inc.*, 2015 WL 8082598, at *1 (D. Minn. Dec. 7 2015), helpful to Plaintiffs' position. There, the court found the parties' royalty agreement was not terminable at will by either party acting alone because it included three "termination scenarios," suggesting that the parties intended for those scenarios to be the exclusive methods of terminating the contract. *Id.* at *4. Here, the letter contains no mention of any termination scenarios or any other suggestion that the parties did not intend for their contractual arrangement to be terminable at will.

In short, Plaintiffs have not met their burden of showing that the parties intended that their compensation agreement include a continuing obligation to pay commissions. Nor have they shown that Defendant was not free to terminate the agreement at any time. "[I]f it appears that no termination date was within the contemplation of the parties, or that their intention with respect thereto cannot be ascertained, the contract will be held to be terminable within a

6

reasonable time or revocable at will, dependent on the circumstances." *Warner-Lambert Pharm. Co. v. John J. Reynolds, Inc.*, 178 F. Supp. 655, 661 (S.D.N.Y. 1959). Therefore, Plaintiffs cannot prevail on their breach of contract claim, and Defendant is entitled to summary judgment in its favor.

### B. Plaintiffs' Motion

Plaintiffs' request for summary judgment on their breach of contract claim must be denied given the Court's determination that Defendant is entitled to summary judgment. However, the Court must still address their request for summary judgment on Defendant's counterclaims.

#### 1. Breach of Contract

Defendant's breach of contract counterclaim is premised on the non-disclosure agreement. Plaintiffs admit the agreement exists and that Defendant performed. Therefore, to recover on this claim, Defendant needs to show failure to perform by Plaintiffs and resulting damages. *See W. Distrib. Co.*, 841 P.2d at 1058. But Defendant has failed to adduce any evidence that Plaintiffs used its confidential information in a manner that violates the non-disclosure agreement. For example, Defendant has not shown that Plaintiffs disclosed confidential information to a third party or used such information to benefit themselves or a third party. Although Defendant contends that Plaintiffs contacted its customers after termination, it does not argue that alone is enough to violate the non-disclosure agreement. Nor has Defendant shown or explained how it was harmed by Plaintiffs' conduct. Therefore, Plaintiffs are entitled to summary judgment on this claim.

### 2. Misappropriation of Trade Secrets

To establish a claim for misappropriation of trade secrets under Colorado law, Defendant needs to show that (1) it possessed a valid trade secret; (2) the trade secret was disclosed or used by Plaintiffs without consent; and (3) Plaintiffs knew or should have known that the trade secret was acquired by improper means. *See DTC Energy Grp, Inc. v. Hirschfeld*, 420 F. Supp. 3d 1163, 1175-76 (D. Colo. 2019); *SGS Acquisition Co. Ltd. v. Linsley*, 352 F. Supp. 3d 1109, 1120 (D. Colo. 2018). A trade secret is defined by statute as "the whole or any portion or phase of any scientific information, listing of names, addresses, or telephone numbers, or other information relating to any business or profession which is secret and of value. To be a 'trade secret' the owner thereof must have taken measures to present the secret from becoming available to persons other than those selected by the owner to have access thereto for limited purposes." Colo. Rev. Stat. § 7-74-102(4).

For present purposes, the Court assumes that some of the information Plaintiffs accessed constitutes trade secrets and that Defendant made reasonable efforts to protect its confidential information. But, as with its breach of contract claim, Defendant has failed to show that Plaintiffs disclosed or used any of its trade secrets. Evidence that Plaintiffs contacted Defendant's customers after termination, without more, is not enough to show that Plaintiffs disclosed or used its trade secrets. After all, the identities of such customers were well known to Plaintiffs. Accordingly, Plaintiffs are entitled to summary judgment on this claim as well.

### 3. Unjust Enrichment

To prevail on its claim for unjust enrichment, Defendant needs to establish that, at its expense, Plaintiffs received a benefit under circumstances that would make it unjust for them to retain the benefit without paying. *See Martinez v. Colo. Dep't of Human Servs.*, 97 P.3d 152,

159 (Colo. App. 2003). "Unjust enrichment is a judicially created remedy designed to avoid benefit to one to the unfair detriment of another." *Id.*

Defendant has not identified any benefit that Plaintiffs received at its expense. Even if Plaintiffs accessed information that Defendant contends is valuable, that does not mean they received any benefit or demonstrate the type of unjust circumstances that would persuade the Court to exercise its equitable power. Therefore, Plaintiffs are entitled to summary judgment on this claim as well.

### C. Plaintiffs' Objection

Plaintiffs' Objection pertains to the magistrate judge's denial of their Motion for Extension of Expert Disclosure Deadlines (ECF No. 105), which sought to extend disclosure deadlines to allow them to present expert testimony in support of their breach of contract claim. In light of the disposition of that claim, Plaintiff's Objection is overruled as moot.

### IV. CONCLUSION

Therefore, the Court GRANTS Defendant's Motion (ECF No. 141); GRANTS IN PART Plaintiffs' Motion (ECF No. 119), as to Defendant's counterclaims, but otherwise DENIES it; and OVERRULES AS MOOT Plaintiffs' Objection (ECF No. 140). The Clerk is directed to CLOSE this case.

DATED this 8th day of December, 2023.

BY THE COURT:

RAYMOND P. MOORE
Senior United States District Judge